'ALEXANDER WEED, Appellant, v. GEORGE F. MAYNARD, Auditor, Respondent.*

No. 5401; December 12, 1876.

**Municipal Corporations—Street Cleaning— Statute Regulating.**—The power of the board of supervisors to cleanse the streets of San Francisco is subject to legislative control, both as to the extent of the work to be done and the mode in which the power is to be exercised.

**Municipal Corporations—Street Cleaning.**—The Principal Purpose of the Act of April 3, 1876, looking to the regulation of street cleaning in San Francisco, was to limit the authority of the board of supervisors in respect of both their power to regulate and the mode of its exercise, and the scope of the act in this respect is not to be defeated by mere reference to its title, "An act to confer additional powers upon the board of supervisors of the city and county of San Francisco."

**Municipal Corporations—Street Cleaning—Statute Regulating.** An act of the legislature limiting the powers of a board of supervisors in respect of street cleaning does not impair the obligation of a contract already made with a private person by such board if the contract is by its express terms to continue "during the pleasure of the board."

**Municipal Corporations—Contract to Clean Streets.**—"The Pleasure of the Board," as expressed in a contract between a board of supervisors of a city and a private person for the cleansing of streets, during which "pleasure" only the contract was to continue, would be determined ipso facto by the enactment of a law limiting the powers of the board in that connection.

---

*For subsequent opinion, see Weed v. Maynard, 52 Cal. 459.

'APPEAL from Nineteenth Judicial District, San Francisco County.

McAllister & Bergin, C. H. Parker and I. P. Hoge for appellant; W. C. Burnett for respondent.

By the COURT.—The power of the board of supervisors to cleanse the streets of the city of San Francisco is subject to legislative control, both as to the extent of the work to be done and the mode in which the power is to be exercised.

Assuming in favor of the appellant that no legislative restraint upon either the power or the mode had been imposed prior to the passage of the act of April 3, 1876 (page 795), it is obvious that the purpose of the act was to regulate both the power and the mode. Theretofore the extent of work to be done and the agency through which it was to be accomplished were committed entirely to the judgment of the board. But in the act referred to it is provided that the streets of the city are to be kept clean "in the following manner": The force to be employed in the work (except so far as it may be recruited from the House of Correction) is not to exceed twenty horses and carts with drivers, and twenty-five additional men as scrapers and sweepers, from the 1st of October to the 1st of April in each year, and for balance of the year fifteen horses and carts with drivers, and twenty additional men as scrapers and sweepers. By the second section of the act the work is to be superintended by two competent persons appointed by the board, at a salary not to exceed one hundred dollars per month to each. These superintendents are to report daily at the office of the superintendent of public streets "the names of all men, and men and teams employed the previous day and where employed," and also the license number of the carts employed in the work. The third and fourth sections of the act provide for the appointment of a superintendent of the work of cleansing the public sewers, who is to make like daily report to the superintendent of public streets; three horses and carts and thirteen men (with such re-enforcement from the House of Correction as may be) being the whole force to be employed in the business.

As observed already, one of the purposes—in fact, the principal purpose—of the act was to limit the authority of the board in the respect indicated, and we know no rule or statutory construction by which the clear scope of that act in this respect is to be defeated by mere reference to its title, "An act to confer additional powers upon the board of supervisors of the city and county of San Francisco." The title thus prefixed apparently had especial reference to the sixth and last section of the act, by which section the board was "invested with full power and authority to cause the persons sentenced or committed to the House of Correction to be employed in cleaning the public streets, highways and sewers of the city and county of San Francisco."

2. Nor do we think that the act is objectionable as impairing the obligation of the contract alleged to exist between the city and county of San Francisco upon the one part and George T. Bromley & Co. upon the other part. The facts are that these parties, in October, 1873, entered into a written contract for the cleaning by Bromley & Co. of certain public streets in the city, the contract to continue in force for the period of one year from the 20th of September preceding, in default of a notice of one month upon the part of the city, and which she reserved the right to give, terminating the contract at an earlier period of time. By the terms of the contract the streets of the city were classified, and for cleaning eighteen miles of certain streets Bromley & Co. were to receive one hundred and sixty dollars per mile per month; upon twenty-eight miles of other streets, eighty dollars per mile per month, and upon twelve and a half miles of "subdivision streets," forty dollars per mile per month.

This contract was fully executed by both parties and expired by its own limitation on the 20th of September, 1874. Upon its expiration the board of supervisors directed the committee on public streets to contract with Bromley & Co. "for cleaning the public streets on the same terms and conditions of the old contract, during the pleasure of the board." Pursuant to this resolution, and in a few days after its passage, the committee entered into a verbal contract with Bromley & Co., similar in all respects to the one just then expired, except that, as directed by the resolution, it was to continue "during the pleasure of the board." In June, 1876, the verbal contract

being still on foot, the board passed a resolution directing that it be reduced to writing as of its date, signed by the committee on health and police of the board, and placed on file in the office of the clerk of the board, which was done accordingly. In this condition of things the act of April 3, 1876, already referred to, was passed and went into immediate effect. The board has not, for itself, at any time before or since the passage of the act, given notice of its desire to terminate the contract.

It is claimed upon the part of the appellant that he is entitled to insist upon the contract, and to be paid according to its stipulations, until the required notice shall have been given by the board. But we are of opinion that, upon the taking effect of the act in question, which was immediately upon its approval by the governor, the pleasure of the board in the respect referred to in the contract necessarily ceased and determined.

As against the positive provisions of the statute to the contrary, the board could exercise no pleasure to continue the cleaning of the streets through agencies forbidden by positive law. Their pleasure must, in such a case, conform to their duty, and that was thereafter to exercise their authority to cleanse the streets and sewers in the manner prescribed by the act, and not otherwise.

It results from these views, and irrespectively of other points made by the respondent, that the judgment must be affirmed, and it is so ordered.

Mr. Justice McKinstry, who did not hear the argument, took no part in the decision.